UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

**CRIMINAL ACTION NO. 23-06-DLB-2**

**UNITED STATES OF AMERICA**                                                            **PLAINTIFF**

V.                                **PLEA AGREEMENT**

**CYLIS ROWE**                                                                           **DEFENDANT**

* * * * *

1. Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter a guilty plea to Counts 2 and 6 of the Indictment. Count 2 charges a violation of 18 U.S.C. § 933(a)(3) (conspiracy to transfer firearms to others with knowledge that the possession of the firearms by others would be a felony); Count 6 charges a violation of 18 U.S.C. § 924(c)(1) (possession of a firearm in furtherance of drug trafficking). Pursuant to Rule 11(c)(1)(A), the United States will move to dismiss the remaining counts of the Indictment applicable to this Defendant at sentencing.

2. The essential elements of Count 2 are:

(a) That the Defendant knowingly and voluntarily conspired with other individuals to knowingly transfer a firearm to another person;

(b) That the transfer that was the subject of the conspiracy affected interstate commerce;

(c) That the Defendant knew or had reasonable cause to believe that the use or possession of the firearm by the recipient would constitute a felony; and

(d) That the Defendant knew the unlawful purpose of the agreement and joined in it willfully, that is, with the intent to further the unlawful purpose.

3. The essential elements of Count 6 are:

(a) That the Defendant committed the offense of possession of a controlled substance with intent to distribute, which is a drug trafficking crime for which he may be prosecuted in a court of the United States;

(b) That the Defendant knowingly possessed the firearm specified in the Indictment; and

(c) That the possession was in furtherance of – that is, to advance or promote – the commission of the offense of possession of a controlled substance with intent to distribute.

4. The United States could prove the following facts that establish the essential elements of the offenses beyond a reasonable doubt, and the Defendant admits these facts:

(a) The Defendant knowingly and voluntarily conspired with others, including Demarco Sturgeon and Clifton Barnett, to transfer firearms to others knowing that the use or possession of the firearm by the recipients would constitute a felony, as alleged in Count 2 of the Indictment. Sturgeon, Barnett, and the Defendant are not licensed to traffic in firearms. Numerous firearms transferred by this conspiracy traveled in interstate or foreign commerce since conspirators possessed and transferred them in Kentucky and Ohio and the firearms were manufactured outside of those states.

(b) In 2022, the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) opened an investigation into individuals regularly selling and possessing firearms and machinegun conversion devices, commonly known as Glock switches or auto sears, to individuals engaged in drug trafficking and other criminal offenses. The investigation was predicated on information from two cooperating sources, who identified Demarco Sturgeon as the primary source of supply of the firearms and Glock switches.

(c) Subsequent investigation by ATF confirmed that Sturgeon was regularly trafficking in firearms straw purchased by Clifton Barnett and the Defendant, as

2

well as machinegun conversion devices supplied by others. The investigation included: (1) digital evidence (primarily Facebook records), (2) records and surveillance video from federal firearms licensees (FFLs), (3) interviews with sources of information, and (4) residential search warrants.

(d) For example, agents obtained video showing Sturgeon firing a handgun with a machinegun conversion device installed at Mark's Guns (a FFL in Florence, Kentucky). Employees at Mark's Guns reported that Sturgeon did not purchase firearms from them but regularly accompanied others, including the Defendant, who bought firearms while with Sturgeon.

(e) In addition, ATF records revealed that the Defendant purchased at least 64 firearms over a one year period within the time charged in Count 2, at approximately 10 different businesses licensed to sell firearms. The employees at additional FFLs similarly identified Sturgeon as a person who frequently accompanied the Defendant and others while they purchased firearms. Agents located video footage from FFLs from the latter half of 2022 showing Sturgeon accompanying the Defendant while the Defendant purchased firearms. The videos depict the Defendant and Sturgeon arriving at and departing from FFLs together. Sturgeon's Facebook account contained communications with the Defendant related to firearms, straw purchases, drug trafficking, and machinegun conversion devices. They are consistent with both individuals participating in street-level drug distribution while in possession of firearms.

(f) A review of Sturgeon's Facebook account revealed photos and videos of machinegun conversion devices, firearms, and illegal drugs and numerous messages sent by Sturgeon advertising, selling, and purchasing machinegun conversion devices, firearms, and illegal drugs during the latter half of 2022. For example, messages in August 2022 revealed that Sturgeon agreed to meet someone to provide two black machinegun conversion devices in exchange for a quantity of drugs; Sturgeon indicated in the conversation that he intended to repackage the drugs for further distribution. The messages further revealed that Sturgeon regularly kept illegal drugs, firearms, and machinegun conversion devices in his possession and available for sale and that he instructed others how to install the conversion devices to convert firearms to fully automatic weapons.

(g) ATF records also showed that Clifton Barnett, the Defendant's half-brother, purchased at least 58 firearms from licensed firearms dealers since January 2020. Video footage from FFLs showed Barnett purchasing firearms while accompanied by another known associate of Sturgeon's on multiple occasions during the latter half of 2022. When interviewed, that associate admitted using Barnett as a straw

3

purchaser to obtain firearms, which he would sell to Sturgeon and others. This particular associate was a minor at the time Barnett supplied him with firearms as part of this conspiracy.

(h) Facebook records revealed communications that Sturgeon and associates paid Barnett to straw purchase firearms for them during the time alleged in the indictment. Sturgeon and the Defendant also supplied Barnett with firearm conversion devices that Barnett sold to others who could not lawfully possess them.

(i) The Defendant admits that he was aware that members of the conspiracy straw purchased and distributed over 100 firearms during the charged time period. Digital and FFL records confirm that the Defendant and Barnett purchased numerous firearms that Sturgeon subsequently offered for sale on Facebook. The Defendant and Barnett were aware that Sturgeon was an unlawful user and distributor of controlled substances during the time they furnished him with firearms.

(j) During the execution of a search warrant on Sturgeon's residence in Kenton County on January 25, 2023, agents located a firearm and a quantity of marijuana in his room. Sturgeon and another occupant of the residence made statements confirming that Sturgeon and the Defendant each regularly distributed marijuana while in possession of firearms. Sturgeon admitted to extensive trafficking in firearms and conversion devices during the time alleged in the Indictment, and to being addicted to fentanyl.

(k) Agents also executed search warrants and arrest warrants at the Defendant's residence and Barnett's residence on January 25, 2023. Both residences are in Kenton County, Kentucky. Agents located three firearms and a quantity of marijuana in the Defendant's residence. Two of the guns were with marijuana in the Defendant's bedroom. Agents located a single firearm in Barnett's residence. Subsequent to these arrests, agents overheard Barnett and the Defendant admitting that they had to sell firearms to pay their rent.

(l) On September 14, 2023, law enforcement executed a search warrant on the Campbell County, Kentucky, residence of Elijah Hopper and recovered over five pounds of marijuana and more than 20 guns. ATF trace reports showed that the Defendant was the initial purchaser of six of those guns and that Barnett was the initial purchaser of two of the others.

(m) The Defendant admits that one of the reasons he possessed the firearm seized from his bedroom on January 25, 2023 was to protect himself and the contents of his residence, including drugs and drug proceeds, from robbery.

5. The maximum statutory punishment for Count 2 is 15 years imprisonment, a $250,000 fine, and 3 years supervised release. A mandatory special assessment of $100 applies to this Count.

6. The statutory punishment for Count 6 is not less than 5 years imprisonment and not more than life imprisonment, a $250,000 fine, and up to 5 years supervised release. A mandatory special assessment of $100 applies to this Count. This sentence must run consecutively to any other term of imprisonment.

7. Pursuant to Rule 11(c)(1)(B), the United States and the Defendant recommend the following sentencing guidelines calculations, and they may object to or argue in favor of other calculations as long as they are not inconsistent with this agreement. This recommendation does not bind the Court.

>   (a) United States Sentencing Guidelines (U.S.S.G.), November 1, 2023, manual, will determine the Defendant's guideline range.
>
>   (b) Pursuant to U.S.S.G. § 1B1.3, the Defendant's relevant conduct includes the conduct described in Paragraph 4 of this agreement.
>
>   (c) Pursuant to U.S.S.G. § 2K2.1(a)(4)(B), the base offense level for Count 2 is 20 because the offense involved machinegun conversion devices and the Defendant is convicted under 18 U.S.C. § 933.
>
>   (d) Pursuant to U.S.S.G. § 2K2.1(b)(1)(D), increase the offense level for Count 2 by 8 levels since the offense involved 100-199 firearms.
>
>   (e) Pursuant to U.S.S.G. § 2K2.1(b)(5)(A), increase the offense level for Count 2 by 2 levels since the Defendant is convicted under 18 U.S.C. § 933(a)(3).

(f) Pursuant to U.S.S.G. § 3E1.1, decrease the offense level for Count 2 by two levels for the Defendant's acceptance of responsibility. Since the offense level determined prior to this two-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level for Count 2 by one additional level based on the Defendant's timely notice of intent to plead guilty. These reductions will not apply if the Defendant commits another crime, obstructs justice, violates this agreement, or violates a court order.

(g) For Count 6, pursuant to U.S.S.G. § 2K2.4(b) and 18 U.S.C. § 924(c)(1)(A)(i), the guideline sentence is the minimum sentence required by statute, that is, 60 months. This sentence must run consecutively to any other term of imprisonment imposed.

8. No agreement exists regarding the calculation of the Defendant's criminal history.

9. The Defendant will not seek a role reduction or file a departure motion pursuant to U.S.S.G. Chapter 5, Parts H or K. The Defendant reserves the right to argue for a variance below the applicable advisory sentencing guidelines range. The United States is free to oppose any requested variance.

10. The Defendant waives the right to appeal the guilty plea and conviction. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence. In return, the United States agrees to dismiss the remaining counts of the Indictment, recommend a sentence within or below the advisory Guideline range as finally determined by the Court, and not request a fine.

11. The Defendant consents to the forfeiture to the United States, by administrative or judicial proceedings, of all right, title, and interest in the property listed

in the forfeiture allegation of the Indictment. The Defendant agrees that this property is subject to forfeiture because a nexus exists between the property and the offense to which he is pleading guilty, as set forth in the forfeiture allegation of the Indictment. The Defendant consents to the entry of a Preliminary Order of Forfeiture, pursuant to Federal Rule of Criminal Procedure 32.2, and agrees take any steps necessary to assist the government in effectuating the surrender and forfeiture of the assets identified herein, including but not limited to executing any documents necessary for the surrender and transfer of title to the United States. The Defendant agrees not to file a claim or petition seeking remission or otherwise contesting the forfeiture of the assets identified herein in any administrative or judicial proceeding, or to assist any other person or entity with doing so, and agrees to withdraw, and hereby withdraws, any such claim or petition that he already has submitted. If the Defendant fails to surrender and forfeit the assets identified for forfeiture herein, he consents to the forfeiture of any other property of his, up to the amount of the value of the assets identified for forfeiture, pursuant to 21 U.S.C. § 853(p), and further agrees that the conditions of 21 U.S.C. § 853(p)(1)(A)-(E) have been met. The Defendant voluntarily and knowingly waives all provisions in Rule 32.2 pertaining to notice and/or the timing of forfeiture orders. The Defendant also waives his right, if any, to a jury trial on forfeiture and all constitutional, legal, or equitable defenses to the forfeiture. The Defendant agrees that this forfeiture is separate and distinct from any restitution, fine, or penalty ordered by the Court and shall survive bankruptcy.

12. The Defendant waives all rights, whether asserted directly or by a representative, to request or to receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 522a.

13. The Defendant agrees to make a full and complete financial disclosure. The Defendant agrees to complete and sign a financial disclosure statement or affidavit disclosing all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea agreement. The Defendant will submit to an examination, which may be taken under oath and may include a polygraph examination. The Defendant will not encumber, transfer, or dispose of any monies, property, or assets under the Defendant's custody or control without written approval from the United States Attorney's Office. If the Defendant is incarcerated at any time in connection with this case, the Defendant will participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments. If the Defendant fails to comply with any of the provisions of this paragraph, the United States, in its discretion, may refrain from moving the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional

level, and may argue that the Defendant should not receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

    14. The Defendant understands and agrees that, pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the Defendant agrees that it is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that any unpaid obligations will be submitted to the United States Treasury for offset. The Defendant authorizes the United States to obtain the Defendant's credit reports at any time. The Defendant authorizes the U.S. District Court to release funds posted as security for the Defendant's appearance bond in this case, if any, to be applied to satisfy the Defendant's financial obligations contained in the judgment of the Court.

    15. If the Defendant violates any part of this Agreement, the United States may void this Agreement and seek an indictment for any violations of federal laws, and the Defendant waives any right to challenge the initiation of additional federal charges.

    16. This document contains the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. Neither defense counsel, nor the United States, have made any other promises to the Defendant.

17. This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

18. The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the attorney has fully explained this Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary.

Date: 1/9/2024

By: CARLTON S. SHIER, IV
UNITED STATES ATTORNEY

Anthony J. Bracke
Assistant United States Attorney

Date: 1/8/2024

Cylis Rowe
Defendant

Date: 8 JAN 2024

Robert McBride
Attorney for Defendant

10